# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **FREEMAN AARN BURNSTAD**, | Case No. 6:15-cv-00921-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security, | |
| Defendant. | |

Kathryn Tassinari and Mark A. Manning, HARDER, WELLS, BARON, & MANNING, P.C., 474 Willamette, Suite 200, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hebert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Jordan D. Goddard, Special Assistant United States Attorney, and Joseph John Langkamer, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Freeman Aarn Burnstad ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for a Period of Disability, Disability Insurance Benefits ("DIB"), and Supplemental Security

Income ("SSI"). For the following reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff protectively filed applications for DIB and SSI on July 11, 2011, alleging disability beginning January 1, 2008. AR 177, 181. Plaintiff was 36 years old at the alleged disability onset date. AR 28. He alleges disability due to mild obesity, osteoarthritis, somatoform disorder, hypertension, myocardial infarction, coronary artery disease, Hashimoto thyroiditis, right side facial pain, and depression. AR 20-22. The Commissioner denied Plaintiff's applications initially and on reconsideration. AR 115, 120, 127, 131. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and the hearing took place on December 16, 2013. AR 134, 35. The ALJ issued a decision on January 9, 2014, finding that Plaintiff was not disabled from January 1, 2008. AR 29. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-4. Plaintiff now seeks judicial review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
impairment or combination of impairments is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
this impairment must have lasted or be expected to last for a continuous
period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
the listed impairments, the analysis continues. At that point, the ALJ must
evaluate medical and other relevant evidence to assess and determine the
claimant's "residual functional capacity" ("RFC"). This is an assessment
of work-related activities that the claimant may still perform on a regular
and continuing basis, despite any limitations imposed by his or her
impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience,
is the claimant able to make an adjustment to other work that exists in
significant numbers in the national economy? If so, then the claimant is
not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014. AR 20. The ALJ then applied the sequential process. AR 20-24. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, January 1, 2008. AR 20. At step two, the ALJ found that Plaintiff has the following severe impairments: mild obesity, osteoarthritis, and a somatoform disorder. *Id.* The ALJ noted the existence of other impairments in the record that he categorized as non-severe.[1] AR 21-22.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the

---

[1] The ALJ considered Plaintiff's history of hypertension, myocardial infarction, history of coronary artery disease, Hashimoto thyroiditis, right side facial pain, depressive disorder, and history of methamphetamine abuse. These were determined to be non-severe. AR 21-22.

regulations. AR 22. In determining whether Plaintiff met the requirements of Listing 12.07, somatoform disorder, the ALJ found that Plaintiff's mental impairment did not satisfy the paragraph B criteria. AR 23.

Continuing step three, the ALJ determined that Plaintiff has the RFC to perform light work, with the following additional limitations: "the claimant is limited to no more than frequent balancing. The claimant would also need to avoid concentrated exposure to moving machinery, heights, and similar hazards." AR 24. In reaching this conclusion, the ALJ found Plaintiff's testimony concerning his pain and other symptoms "not entirely credible" in light of objective medical evidence and Plaintiff's own report of his daily activities. AR 24-25. The ALJ also considered written opinion evidence from five medical sources and one non-medical source. AR 26-27. The ALJ gave "significant weight" to reviewing state agency physician Dr. Mary Ann Iyer and examining consultative physical examiner Dr. DeWayde C. Perry. AR 26. The ALJ also gave significant weight to portions of the opinion evidence of Plaintiff's treating physician, Dr. John R. Ford. *Id.* Little weight was given to examining consultative psychological examiner Dr. Paula Belcher, and "no weight" was given to examining physician Dr. David Truhn. AR 26-27. The ALJ found that the non-medical opinion evidence of Plaintiff's wife, Maria Berggren, supported the RFC finding. AR 27.

At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as a fast food restaurant manager and book sales person. AR 27. This conclusion compels a finding of not disabled. Nonetheless, the ALJ went on to step five, consulting a vocational expert who testified about other jobs existing in significant numbers in the national economy, which

Plaintiff is able to perform.[2] AR 28-29. The ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2008 through the date of the decision, January 9, 2014. AR 29.

## DISCUSSION

Plaintiff seeks review of the ALJ's determination that Plaintiff has not been under a disability after January 1, 2008. Plaintiff argues that the ALJ erred by: (A) discrediting the opinion of Dr. Truhn; (B) failing to find that Plaintiff meets the criteria of Listing 12.07 and 12.08; (C) failing to credit Plaintiff's testimony; (D) failing to credit the lay witness testimony of Plaintiff's wife, Maria Berggren; and (E) finding that Plaintiff retains the ability to perform his past work.

**A.  Failure to Credit the Opinion of Dr. Truhn.**

Plaintiff offered the written opinion of Dr. Truhn, an examining physician, as to the limiting effects of Plaintiff's mental impairments. AR 677-696. Dr. Truhn's assessment was based on an examination of Plaintiff, a battery of tests,[3] records provided by Plaintiff's attorney, and an interview with Plaintiff's wife. AR 678. It is Plaintiff's most recent and most thorough psychological examination. Dr. Truhn diagnosed Plaintiff with Undifferentiated Somatoform Disorder, Personality Disorder Not Otherwise Specified ("NOS"), and Major Depressive Disorder. AR 690. Dr. Truhn opined that Plaintiff's somatic symptoms and severe depression impaired Plaintiff's ability to seek and maintain employment, AR 690, and that Plaintiff experienced markedly limited abilities in areas of understanding and memory, sustained concentration, social interaction, and adaption. AR 693-696.

---

[2] These include photocopy machine operator, officer helper, and telephone solicitor. AR 29.

[3] Dr. Truhn administered the Wide Range Achievment Test-4, the Comprehensive Trail Making Test, the Wechsler Adult Intelligence Scale, Fourth Edition, the Minnesota Multiphasic Personality Inventory-2-RF, and the Millon Clinical Multiaxial Inventory-III.

The ALJ gave Dr. Truhn's opinion no weight because: (1) there is no history of any treatment for a personality disorder or major depression; (2) there is no evidence in the record that Plaintiff experienced loss of appetite and sleep disturbances pertaining to depression (3) Plaintiff's activities of daily living do not show any mental limitations or restrictions; (4) Plaintiff's somatoform disorder pertains only to the pain in his face; and (5) Plaintiff's work history contradicts Dr. Truhn's opinion that Plaintiff became disabled in 2008.[4] AR 27.

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting the opinion of Dr. Truhn, an examining physician. The Commissioner asserts that the ALJ need only provide specific and legitimate reasons for rejecting the testimony of Dr. Truhn, but adds that the ALJ also satisfied the clear and convincing standard.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not

---

[4] Dr. Truhn found that Plaintiff's condition became disabling in 2007. This appears to be an erroneous date, triggered from Plaintiff's emergency room visit when he had what he refers to as his "physical breakdown." AR 680. There was an error in the medical records of that visit, which lists the visit date sometimes as January 1, 2008, and sometimes as January 1, 2007. AR 295. Plaintiff had reported to Dr. Truhn that his breakdown was in "about 2007." AR 680. The correct date of the emergency room visit is January 1, 2008, which is Plaintiff's alleged disability date. Because Plaintiff also worked after January 1, 2008, however, this reason provided by the ALJ for rejecting Dr. Truhn's opinion is addressed.

contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen*, 80 F.3d at 1286.

Dr. Truhn's opinion is contradicted by other medical opinions. Psychological examiner Dr. Belcher diagnosed Plaintiff with a somatoform disorder in 2011 but did not diagnose Plaintiff with depression or a personality disorder. AR 481. Reviewing psychologist Dr. Joshua

J. Boyd diagnosed Plaintiff with somatoform disorder but found that Plaintiff experienced only mild limitations as a result of his impairment. AR 98. Accordingly, the ALJ must provide specific, legitimate reasons for rejecting Dr. Truhn's contradicted opinion concerning Plaintiff's mental impairments.

### 1.  History of treatment for personality disorder or depression

The ALJ found no history of treatment for personality disorder or major depression to support Dr. Truhn's diagnosis. The record supports this finding. There is also, however, no previously *diagnosed* personality disorder in the record, and it is therefore unreasonable to expect Plaintiff to seek treatment for a mental disorder during a period in which he remained unaware of it. Accordingly, the ALJ erred in relying on Plaintiff's lack of treatment for a personality disorder to discredit Dr. Truhn.

Unlike with his personality disorder, Plaintiff's medical treatment providers notate his depression throughout the record, starting in 2008. AR 303, 356, 339, 458, 454, 453, 450, 481, 493, 628, 692. Plaintiff took Cymbalta to "help with his pain and mood," (AR 339) and saw a counselor for depression in 2011 (AR 453). Although Dr. Belcher found that Plaintiff's symptoms did not meet the criteria for depressive disorder (AR 481) Plaintiff told her that "as his health deteriorates, he wonders if he should broach the subject of assisted suicide with his physician," (AR 478). Contrary to the ALJ's assertion, the record shows that Plaintiff experienced symptoms of depression for which he intermittently sought treatment.

Furthermore, the Ninth Circuit has recognized that "the fact that a claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude [a physician's] assessment of claimant's condition is inaccurate." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (stating "it is a questionable

practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation") (quotation marks and citation omitted).

As noted by Dr. Beth Blumenstein, Plaintiff "is not really amenable to acknowledging that much of his symptoms are psychological." AR 450. Additionally, Plaintiff reported to Dr. Truhn that Plaintiff "believes that the physical problems are causing the depression and that the depression would not be treatable until after the medical problems are treated," when in fact Plaintiff's mental disorder is the likely source of his physical problems. AR 682; *See Reed v. Massanari,* 25 F. App'x 535, 536 (stating that "somatoform disorder means that he experiences physical symptoms for which there are no demonstrable organic findings and for which there is a strong presumption that the symptoms are linked to psychological factors) (citing STEDMAN'S MEDICAL DICTIONARY 510 (26th ed. 1995)).

Further, Plaintiff's wife reported that Plaintiff "does not attend any counseling because they cannot afford it." AR 688. The Ninth Circuit has explained that "disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Orn,* 495 F.3d at 638 (citation omitted). Considered together, these factors provide an adequate explanation for why Plaintiff did not seek treatment for his depression. Accordingly, Plaintiff's lack of treatment for depression was not a legitimate basis on which to discredit Dr. Truhn's diagnosis and opinion.

### 2.   Symptoms of Depression

The ALJ found no evidence that Plaintiff experienced loss of appetite and sleep disturbances due to depression. AR 27. The record shows multiple reports of decreased appetite. AR 310, 315, 334, 346, 349, 355, 441, 480, 611, 650.

As for sleep disturbances, Plaintiff testified at the hearing that he sleeps heavily but is always exhausted, and has considered doing a sleep study. AR 56. He also reported in his

Function Report that his sleep is not restful and he wakes up exhausted. AR 253. As discussed above, Plaintiff experienced symptoms of depression, beginning at least in 2008, some of which include changes in sleep habits. AR 303, 339, 356, 362, 458, 454, 453, 450, 481, 493, 628, 692. Additionally, his medical records also indicate specific reports of sleeping problems. *See, e.g.*, AR 476 (December 13, 2010, Plaintiff completed a medical questionnaire form and reported that he had trouble falling asleep, staying asleep, or sleeping too much "nearly every day" and that he felt tired or had little energy "nearly every day"); AR 459 (November 29, 2010, Plaintiff reported sleeping 10 to 11 hours per night, but feeling fatigued in the afternoons and so napping for three to four hours and that without naps he is tired all day); AR 315 (July 24, 2009, Plaintiff reported that his pain was waking him and affecting his sleep); 341-42 (June 15, 2009, Plaintiff reported concern that he may have sleep apnea based in part on daily fatigue; examining physician assistant diagnosed possible sleep apnea and recommended a sleep study); AR 334 (February 10, 2009, Plaintiff reported that he did not feel rested even after getting eight to nine hours of sleep and wondered if had sleep apnea); AR 441 (February 5, 2008, Plaintiff reported that his fatigue has become "increasingly severe" despite sleeping 10 to 14 hours per day) . Moreover, Plaintiff's wife reported that he sleeps heavily, is hard to wake up, takes naps, and yet still does not feel rested. AR 229.

"Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusions." *Nguyen*, 100 F.3d at 1465. The ALJ's assertion that no evidence exists to show Plaintiff experiences loss of appetite and sleep disturbances due to depression is contradicted by the record, and therefore is not a legitimate reason to discredit Dr. Truhn's opinion.

### 3. Activities of Daily Living

Dr. Truhn opined that Plaintiff experienced marked limitations in eleven different areas on the mental RFC questionnaire.[5] AR 693. The ALJ, however, found that Plaintiff's activities of daily living "clearly do not show any mental limitations or restrictions." AR 27. The ALJ noted earlier in his decision Plaintiff can help with chores, cook, grocery shop, read, use the internet, help with childcare, and drive when necessary. AR 25.

Inconsistency with Plaintiff's daily activities is a proper basis on which to reject a medical opinion. *Andrews*, 53 F.3d at 1043. However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Furthermore, a plaintiff need not be "utterly incapacitated to be eligible for benefits" and not all activities of daily living are transferable to the workplace "where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff testified that he can hold his newborn and walk back and forth for 15 to 20 minutes at most. AR 50. He is afraid to drive unless it is absolutely necessary because his dizziness and pain affect his ability to focus on driving. AR 50, 58. Plaintiff can vacuum, do laundry, and clean, although he may need one or more days to recover after doing some cleaning

---

[5] These areas are as follows: ability to carry out detailed instructions; ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to work in coordination with or proximity to others without being distracted by them; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticisms from supervisors; ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; ability to be aware of normal hazards and take appropriate precautions; and ability to travel in unfamiliar places or to use public transportation. AR 694-96.

tasks. AR 255. He can grocery shop once a week for one to two hours. AR 255. He can walk five

blocks before needing to rest for 10 to 15 minutes. AR 257. Plaintiff reported that he takes his

daughter on errands but his wife bathes her, brushes her teeth, and takes her to doctor

appointments. AR 253. Plaintiff's "entire daily schedule is built around [his] pills." AR 254.

Plaintiff's wife reported that Plaintiff must have a three to four hour nap in the afternoon to

function the rest of the day. AR 228.

These sporadic activities punctuated by long periods of rest and an extensive medication

schedule support Dr. Truhn's opinion that Plaintiff is markedly limited in his ability to complete

a normal workday and workweek without interruptions from psychologically-based symptoms

and need for a significant number and length of rest periods. There is also evidence in the record

that Plaintiff experiences difficulty adhering to basic standards of neatness and cleanliness, and

would be unable to sustain his medication schedule while completing other tasks. AR 229

(Plaintiff showers once a week to once every ten days, and will wear the same clothes for several

days); AR 53 (Plaintiff must watch the clock in order to remember to take his pills according to

his pill schedule). Further, the Court has considered Dr. Truhn's other limitation findings, and

concludes they are not contradicted by Plaintiff's daily activities and the overall picture they

create. Therefore, the ALJ did not legitimately rely on Plaintiff's activities of daily living to

discount Dr. Truhn's assessment because Plaintiff's limited activities are not transferable to

completing an eight-hour workday and are therefore not inconsistent with Dr. Truhn's opinion

that Plaintiff could not work a regular workday.[6]

---

[6] To the extent the ALJ was relying on the standard for discounting a claimant's
testimony based on the claimant's daily living activities, where activities are not considered as
transferable to a work setting but instead as contradicting the alleged severity of the claimant's
symptoms, the daily living activities must be inconsistent with claimed limitations to be relevant

### 4.  Somatoform Disorder

The ALJ limited consideration of Dr. Truhn's diagnosis of somatoform disorder to Plaintiff's facial symptoms. AR 27. The record does not support such a limitation. While Plaintiff did report pain in his jaw during Dr. Truhn's evaluation, Plaintiff also reported exhaustion, mobility issues, and shoulder pain. AR 682. Aside from these self-reported subjective symptoms, Dr. Truhn observed "numerous pain behaviors" such as "kneeling on the floor to complete a true/false questionnaire." AR 678. Dr. Truhn also independently reviewed Plaintiff's medical records. AR 678. Even if Dr. Truhn's diagnosis was limited to Plaintiff's jaw pain, this limitation is not a sufficient reason to disregard Dr. Truhn's opinion as to the mental effects and limitations of Plaintiff's somatoform disorder.

### 5.  Work History

The ALJ also rejected Dr. Truhn's opinion regarding when Plaintiff's symptoms became disabling in part because Plaintiff continued to work after that time. Plaintiff testified that for eight months in 2008 and four months in 2009 he worked at KTJK Enterprises as a jeweler three days a week for four or five hours a day because no one else could do his job. AR 41-43, 245. Plaintiff stopped working in April of 2009 because his physical condition deteriorated, the Eugene branch of the business closed, and he could not relocate or commute to the Portland branch of the business. AR 43.

Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." *Harmon v. Finch*, 460 F.2d 1229, (9th Cir. 1972) (quoting 42 U.S.C. § 423 (d)(1)(A)). Part time work after the alleged disability onset date may constitute a legitimate reason for discounting a physician's opinion that

to a credibility analysis. *Reddick*, 157 F.3d at 722. The Court finds that Plaintiff's daily living activities are not inconsistent with Dr. Truhn's findings.

a claimant's impairments became disabling as of that date. *See Wilson v. Astrue*, 435 F. App'x 636, 639 (9th Cir. 2011) (finding that the ALJ properly discredited a physician's assessment of a plaintiff's functional ability when physician also noted that the plaintiff was capable of part time work). The determinative issue is whether the plaintiff's part-time work is inconsistent with the limitations asserted. *See Sweeney v. Barnhart,* 163 F. App'x 580, 581 (9th Cir. 2006) (upholding an ALJ's adverse credibility finding when the plaintiff's alleged limitations were inconsistent with her part time work for several months after surgery for her carpal tunnel syndrome); *Forester v. Colvin*, 22 F. Supp. 3d 1117, (D. Or. 2014) (finding that an ALJ erred in discrediting the plaintiff when her part time work from home with flexible hours was consistent with her assertion that she could only engage in sporadic activity).

  The ALJ partially supported his decision to give no weight to Dr. Truhn's opinion because Plaintiff worked as a jeweler from October 2006 through April 2009. AR 64. Plaintiff testified that after his alleged disability onset date of January 1, 2008, he only worked part time.[7] The ALJ found at step two of his analysis that this part time work tended to show "that the claimant's impairments are not as debilitating as alleged." AR 20. The ALJ did not explain how Plaintiff's part time work activities are inconsistent with Plaintiff's alleged disability onset date, despite acknowledging that Plaintiff's work in 2008 and 2009 was not substantial gainful activity. *Id.*

  The ALJ  noted, however, that the fact that Plaintiff ultimately stopped working because the Eugene branch of the jewelry store he worked at closed and that Plaintiff continued to look

---

[7] At the hearing, Plaintiff was confused regarding what years he worked part time. AR 41-44. Plaintiff reported for purposes of completing his Work Activity Report, however, that in January 2008 he reduced his hours to part time work. AR 214. Additionally, Plaintiff's earnings summaries and reports to medical providers show that he worked part time in 2008 and 2009. *See* AR 200, 203, 356, 359, 479.

for work after that time was "compelling evidence" that Plaintiff had the capacity to work.

AR 25; *see also* 42-44 (Plaintiff's testimony regarding his work history). Furthermore, Plaintiff's

part time work continued for a period of more than 12 months after the alleged onset date.

Although Plaintiff disagrees with the ALJ's interpretation of the record, "[w]hen the evidence

before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's

conclusion." *Batson*, 359 F.3d at 1198. Based on the above facts, it was a rational conclusion by

the ALJ that Plaintiff's ability to work for a long period of time and continued search for work

after the alleged disability onset date found by Dr. Truhn contradicted Dr. Truhn's opinion

regarding the onset date.

### 6.  Conclusion

In summary, ALJ legitimately relied upon Plaintiff's work history but erred in relying on

Plaintiff's history of lack of treatment for depression and a psychological disorder, lack of

symptoms of depression, contradictory activities of daily living, and somatoform disorder in

discrediting Dr. Truhn. Although Plaintiff's contradictory work history may indicate that

Dr. Truhn's opinion is not entitled to controlling weight, this alone is insufficient to give no

weight to the most recent and thorough psychological evaluation on the record, made by a

specialist, pertaining to his specialty, and providing the only assessment of the limiting effects of

Plaintiff's mental disorders.[8] *See Stewart v. Colvin,* 16 F.Supp. 3d 1209, 1216 (D. Or. 2014)

(finding that inconsistency with daily activities, inconsistent treatment, and limited work during

the period at issue were "insufficient reasons for discrediting the opinion of [the physician] who

is the only treating or examining physician on this record who provided an opinion as to the

---

[8] Plaintiff's treating physician refused to fill out a mental residual functional capacity report (AR 634), and the ALJ gave little weight to Dr. Paula Belcher, a consultative psychological examiner (AR 26). The ALJ only gave significant weight to doctors who did not assess Plaintiff's mental capacity. AR 27.

limiting effects of Plaintiff's alleged mental impairments."); *Lester,* 81 F.3d at 833 (stating that "the Commissioner must evaluate the claimants 'ability to work on a sustained basis'" and that "the sporadic ability to work[ is] not inconsistent with disability"); *Cf.* C.F.R. § 404.1527(c)(5) (stating "[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty…"). Accordingly, the ALJ's decision to discredit Dr. Truhn's opinion is not supported by substantial evidence in the record.

## B.  Failure to Find that Plaintiff Meets the Requirements of Listing 12.07 and 12.08

### 1.  Listing 12.07

Plaintiff contends that the ALJ erred in failing to find that Plaintiff meets the criteria of Listing 12.07, Somatoform Disorder. 20 C.F.R. Part 404, Subpt. P, App.1. Somatoform disorder is defined as "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." *Id.*

If a claimant's impairment matches an impairment on the Listing, the claimant is automatically entitled to disability benefits. *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003). However, **"**[t]he mere diagnosis of an impairment [in a listing] is not sufficient to sustain a finding of disability." *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990). Instead, the severity requirement of Listing 12.07 is met "when the requirements in both A and B are satisfied."

To satisfy the paragraph B criteria, a plaintiff's mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpt. P, App.1.

In evaluating the paragraph B criteria to determine the severity of Plaintiff's mental impairment, the ALJ found that the listing level severity had not been met because Plaintiff experienced only mild difficulties in activities of daily living, social functioning, and maintaining concentration, persistence, or pace, and no episodes of decompensation. AR 23.

Specifically, the ALJ found mild restriction in daily activities based on Plaintiff's ability to prepare simple meals on a daily basis, do household chores, drive, shop, and care for his young daughters. AR 23. With regard to social functioning, the ALJ found mild difficulties based on Plaintiff's interaction with others online and occasionally by phone or in person, and observations of Plaintiff's appropriate social interaction made by examining physicians. *Id.* The ALJ relied on Plaintiff's mental status testing to determine that he has mild difficulties with regard to concentration, persistence, or pace. The record did not show episodes of decompensation. *Id.*

While, as discussed above, the ALJ may have overstated Plaintiff's activities of daily living, Plaintiff's mental impairment must cause at least two marked limitations in order to satisfy the paragraph B criteria. Accordingly, even considering the limitations to daily activities, the ALJ did not err in determining that the severity of Plaintiff's somatoform disorder does not meet Listing 12.07.

### 2.  Listing 12.08

Plaintiff also argues that the ALJ erred in finding that Plaintiff's condition does not meet Listing 12.08, pointing to Dr. Truhn's diagnosis of Personality Disorder NOS. The Court has found that the ALJ erred in giving this physician's opinion no weight. However, Listing 12.08 requires Plaintiff to meet the same paragraph B criteria as Listing 12.07, which the ALJ determined Plaintiff failed to meet. Accordingly, the ALJ's determination that Plaintiff failed to show his impairment met the requirements of Listing 12.08 was not in error.

**C.  Failure to Credit Plaintiff's Testimony**

Plaintiff argues that the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's testimony. After finding that Plaintiff's medically determinable impairments could cause the alleged symptoms, the ALJ rejected Plaintiff's statements concerning the severity of the symptoms. AR 24. The ALJ found Plaintiff's testimony concerning the limiting effects of Plaintiff's impairment to be "not entirely credible" because of inconsistencies with objective medical evidence, Plaintiff's reported activities of daily living, and Plaintiff's ability to work past his alleged onset date. AR 24-25.

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen,* 80 F.3d at 1282.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 16-3p, *available at* 2016 WL 1119029. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins,* 466 F.3d at 883.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid[,] [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . ."[9] *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision

---

[9] The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-3p, *available at* 2016 WL 1119029 (superseding SSR 96-7p). The ALJ's January 2014 decision was issued before SSR 16-3p became effective and there is no binding precedent interpreting this new ruling including whether it applies retroactively. *Compare Ashlock v. Colvin*, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ

may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson,* 359 F.3d at 1197.

In considering Plaintiff's testimony about his osteoarthritis symptoms, the ALJ looked at a total body bone scan, results of a physical exam, and physicians' observations of Plaintiff in the medical records. AR 25. Specifically, the ALJ noted that, while Plaintiff had mild radiotracer activity at the knees and shoulders, medical exams demonstrated Plaintiff retained muscle strength in the upper and lower extremities bilaterally, and a full range of motion in his shoulders. AR 25. Plaintiff also had non-tender back, bilateral knee and hip exams, and physicians observed that Plaintiff had a normal gait, was able to cross his legs easily, and put on his shoes. AR 25.

Plaintiff argues that the ALJ's reliance on a lack of objective medical evidence to support Plaintiff's subjective pain testimony is misplaced because that is the very nature of Plaintiff's somatoform disorder. The ALJ recognized Plaintiff's somatoform disorder as a severe impairment, although one not meeting the requirements of Listing 12.07. AR 20, 23. When somatoform disorder is recognized as a severe impairment, "the lack of objective medical evidence in support of Plaintiff's medical complaints does not constitute a clear and convincing reason for finding Plaintiff's testimony not credible." *Engelhardt v. Colvin*, 2013 WL 3894950 at *4 (D. Or. July 26, 2013).

The ALJ furthered relied on Plaintiff's activities of daily living and work history to support a non-credibility finding. AR 25-26. When a claimant's daily activities "are transferable to a work setting" or "contradict claims of a totally debilitating impairment," performance of

---

decision issued prior to the effective date), *with Lockwood v. Colvin*, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the Court need not resolve this issue.

those activities may serve as a basis for discrediting a claimant. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Where daily living activities are found to contradict claims of a disabling condition, the activities must be inconsistent with claimed limitations to be relevant to a credibility analysis. *Reddick*, 157 F.3d at 722.

The ALJ noted that Plaintiff's daily activities include driving, helping with chores, cooking, shopping, reading, taking walks, and playing with his daughter. AR 25. Plaintiff argues that the ALJ overstated these activities while ignoring his limitations. In the past two years, Plaintiff alleges limited ability to do physical activities due to dizziness and weakness. AR 50-51, 55. As discussed above, the ALJ's summary of the record is not an accurate depiction of Plaintiff's sporadic activities requiring long periods of rest. These activities are not transferable to a work setting requiring eight hours days, five days a week. Additionally they do not contradict Plaintiff's claimed limitations of only being able to engage in activities for a brief period, requiring lots of rest. Plaintiff's daily living activities are therefore not a clear and convincing reason for discrediting Plaintiff. The ALJ further reasoned that Plaintiff's impairments were unlikely to prevent him from working because (1) the impairments did not prevent Plaintiff from working after the alleged disability onset date, and (2) Plaintiff stopped working due to the business closing and continued looking for work thereafter. AR 25.

Leaving work for reasons other than the alleged disability is a relevant factor in assessing credibility. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (considering as a relevant factor that Plaintiff left work because he was laid off and not because he was injured); *Tommasetti,*533 F.3d at 1040 (finding Plaintiff's claim that his diabetes was disabling was undermined when it was not the reason Plaintiff stopped working). When a claimant's work history undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant.

*Bruton*, 268 F.3d at 828. However, evidence that the plaintiff "tried to work for a short period of time and, because of his impairments, failed," without more, "is not sufficient basis for [an] ALJ's adverse credibility finding." *Lingenfelter*, 504 F.3d at 1036 (emphasis omitted); *See also* 20 C.F.R. § 404.1592 (stating that a trial work period will not show "that your disability has ended until you have performed services in at least 9 months.").

In *Lingenfelter*, the court found that the plaintiff's inability to continue part time work for only nine weeks due to his impairment was not a clear and convincing reason to discount his testimony. 504 F.3d 1028, 1037 (9th Cir. 2007). Unlike the plaintiff in *Lingenfelter*, however, Plaintiff testified to working part time for a significant time after the alleged onset date, and stopped working when the Eugene branch of the business closed. AR 43-44. Additionally, Plaintiff continued to look for work after that closure. An ALJ may consider a plaintiff's continued search for employment after the alleged onset date in weighing plaintiff's credibility. *See Bray,* 554 F.3d at 1227 (upholding an adverse credibility finding that relied in part on the plaintiff's work history and subsequent seeking out of employment). On balance,  the ALJ's negative credibility determination, which relied in part  on Plaintiff's ability to work part time for more than a year after the alleged disability onset date, leaving his job due to reasons other than his disability, and continued search for employment after the business closed is not an irrational interpretation of the facts. Accordingly, the ALJ's credibility interpretation must be upheld.

## D.  Failure to Credit Lay Evidence

The ALJ found that the lay witness testimony of Maria Berggren, Plaintiff's wife, supported the ALJ's RFC determination. AR 27. Plaintiff argues that the ALJ erred by disregarding portions of lay witness testimony that support Plaintiff's claim.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053

(9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ appears to credit the lay evidence of Ms. Berggren that states that Plaintiff helps care for their daughter, does household chores, and shops several times a week. AR 27. This characterization is not entirely accurate. The ALJ appears to ignore Ms. Berggren's testimony that Plaintiff can only run an errand for two hours before exhausting himself, cannot focus enough to read, and must be reminded to bathe and take medication. AR 228-31. Due to

Plaintiff's exhaustion, Ms. Berggren states she cannot "imagine that he could last one day at a job site without fainting, falling, vomiting, or passing out from exhaustion and pain." AR 228.

An ALJ must read opinion evidence in context. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Therefore, the ALJ's selective reliance on this lay testimony was in error.

## E.  Finding that Plaintiff Retains the Ability to Perform Past Work

The ALJ determined that Plaintiff is capable of performing his past work as a fast food manager or book sales person as it is generally performed. AR 28. Plaintiff argues that Dr. Truhn's findings of marked mental limitation show that Plaintiff does not retain the RFC to perform past work. The previous determination that the ALJ erred in giving no weight to Dr. Truhn's opinion may change the outcome of Plaintiff's RFC analysis, particularly in the consideration of the limiting effects of Plaintiff's mental impairments. Therefore, Plaintiff's ability to perform past work should be reconsidered in light of the Court's findings.

## F.  Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly

rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.

> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

As explained above, the ALJ failed to provide legally sufficient reasons for discrediting Dr. Truhn's opinion and Plaintiff's wife's testimony. Failing properly to consider this evidence may affect Plaintiff's RFC. The Court finds that outstanding issues remain regarding Plaintiff's appropriate RFC, and whether Plaintiff can perform past relevant work or other work that exists in sufficient numbers in the national economy. Thus, remand for immediate award of benefits is not appropriate. Upon remand, the ALJ shall appropriately consider Dr. Truhn's testimony and the testimony of Ms. Berggren, reevaluate the other credibility determinations if needed, and formulate a new RFC. Accordingly, this matter is remanded for further proceedings.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is REVERSED and REMANDED for further proceedings as set forth herein.

**IT IS SO ORDERED**.

DATED this 2nd day of August, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge